United States District Court
Southern District of Texas
**ENTERED**
December 05, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

No. 4:20-cv-02725

IN RE: CHESAPEAKE ENERGY CORPORATION,
Debtor.

COMMONWEALTH OF PENNSYLVANIA,
By and through the Pennsylvania Office of Attorney General,
Appellant,

v.

CHESAPEAKE ENERGY CORPORATION; CHESAPEAKE APPALACIA, LLC; CHESAPEAKE OPERATING, LLC; and CHESAPEAKE ENERGY MARKETING, LLC,

**MEMORANDUM AND ORDER**

This bankruptcy appeal presents a concise statutory question. The Court is asked to determine the meaning of an exception to the stay of non-bankruptcy litigation which is imposed automatically by the initiation of bankruptcy proceedings. 11 U.S.C. § 362(b)(4). In particular, the Commonwealth of Pennsylvania (the "Commonwealth") seeks to continue state court litigation against Debtors Chesapeake Energy Corporation, et al. ("Debtors"), because the litigation qualifies as "the continuation of an action or proceeding by a governmental unit or any organization exercising authority to enforce such unit's or organization's . . . police and regulatory power including the enforcement of a judgment other than a money judgment . . . ." *Id.*

**I. PROCEDURAL BACKGROUND**

The Chesapeake bankruptcy and the Commonwealth's state court action against Debtors feature many complications. For purposes of this appeal, however, the material aspects of both are simple and, except as noted, are agreed. The Debtors, in the business of natural gas exploration

and development, filed bankruptcy in the summer of 2020, primarily because of pre-bankruptcy debts that exceeded the Debtors' ability to pay. In filing bankruptcy, Debtors became entitled to the familiar protection of the automatic stay. The stay "springs into being immediately upon the filing of a bankruptcy petition." *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir. 1997). The stay is one of the foundational elements of bankruptcy jurisprudence and is meant to help achieve some of its long-term objectives, such as equality of treatment of creditors, consolidation of claims, and a debtor's reorganization and fresh start. *In re U.S. Lines, Inc.,* 197 F.3d 631, 640 (2d Cir. 1999); *Penn Terra Ltd. v. Dep't of Envtl. Res.,* 733 F.2d 267, 271 (3d Cir. 1984).

> The automatic stay is very broad:
>
> > (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, 303 of this title . . . operates as a stay, applicable to all entities, of—
> >
> > > (1) The commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)–(a)(1).

However, the Bankruptcy Code provides, also in section 362, for exceptions to the automatic stay. The exception that is pertinent to this appeal has already been quoted. The purpose of the exception is to prevent a debtor from "frustrating necessary governmental functions by seeking refuge in bankruptcy court." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1024 (2d Cir. 1991) (internal quotation marks omitted). The parties disagree as to whether the Commonwealth's litigation falls within the contours of this particular exception.

The state court litigation at issue originated in 2013 and 2014 when private Commonwealth landowners initiated several lawsuits against Debtors alleging underpayment of royalties. Proposed settlements were reached, but in 2015 the Commonwealth entered the litigation by filing its own state-court litigation invoking the Commonwealth's Unfair Trade Practices and Consumer Protection Act ("UTPCPL") and common law antitrust. The Commonwealth alleges that Debtors improperly deducted post-production costs from royalty payments in violation of the leases at issue in the private litigation. The Commonwealth seeks monetary damages on behalf of the lessor landowners and injunctive relief requiring Debtors to comply with the leases going forward, and to refrain from engaging in oil and gas activities in the Commonwealth until all monies have been paid. In its antitrust claims, the Commonwealth contends that Debtors and Anadarko Petroleum Corp., another energy company, conspired to restrain trade.

The Bankruptcy Court held that the automatic stay applied to the state court litigation and that it did not fall within the § 362(b)(4) exception. This appeal followed.

## II.   THE COMMONWEALTH'S REQUESTED RELIEF

In determining whether the Commonwealth's intended course of action fits within the meaning of § 362(b)(4), reference must be made to the specifics and the extent of the Commonwealth's requested relief. The most salient filing by the Commonwealth is the "Response by the Commonwealth of Pennsylvania in Opposition to the Debtors' Emergency Motion for Entry of an Order Enforcing the Automatic Stay Against the Office of the Attorney General of the Commonwealth of Pennsylvania." *See In re Chesapeake Energy Corp., et al.*, No. 20-33233 (Bankr. S.D. Tex. 2020). In its prayer for relief, the Commonwealth seeks the entry of an order: (1) declaring that the defendants' conduct had been in violation of the UTPCPL and Pennsylvania's common law of antitrust; (2) enjoining the defendants from violating Pennsylvania

law in the future; (3) directing the defendants to restore money that may have been acquired by unlawful means to the relevant Pennsylvania landowners; (4) directing the defendants to pay $1000 in civil penalties for each violation of the UTPCPL, increasing to $3000 for each violation involving a victim who had reached the age of sixty; (5) directing the defendants to disgorge and forfeit all profits that they had derived from their unlawful activities; (6) directing the defendants to pay the Commonwealth all costs relating to the investigation and prosecution of the action; (7) directing the defendants to forfeit their right or franchise to engage in certain business activities "until such time as all monies ha[d] been paid for restitution, costs and civil penalties;" and (8) providing any other relief that the Court deemed to be "necessary and appropriate."

The Commonwealth's requested relief must be juxtaposed against the language of § 362(b)(4), which allows "the enforcement of a judgment other than a money judgment . . . ." Of the relief that the Commonwealth prayed for in its itemized list, declaring that Debtors had been in violation of the UTPCPL and the Commonwealth common law of antitrust, enjoining the Debtors from violating Commonwealth law in the future, and directing Debtors to forfeit their right or franchise to engage in certain business activities all seem entirely consistent with § 362(b)(4).

The remainder of the list, however, clearly contemplates the enforcement of a money judgment, which is an exception to the exception. This the Commonwealth is not allowed to do. The hazards of permitting enforcement of a money judgment against debtors in bankruptcy are self-evident. There would be a set of obligations that would appear to be inconsistent with, and of questionable priority relative to, the payments that Debtors will be obligated to make under any plan of reorganization that is confirmed. Would Debtors be required to pay the Commonwealth

royalty owners 100 cents on the dollar while creditors in the bankruptcy proceeding are receiving only a few cents on the dollar?

A similar governmental request was considered in *Equal Employment Opportunity Commission v. Rath Packing Company,* 787 F.2d 318 (8th Cir. 1985). *Rath*, in turn, was cited with approval in *In re Commonwealth Companies*, *Inc.,* 913 F.2d 518 (8th Cir. 1990), upon which the Commonwealth relies in its most recent filing with this Court. (Doc. 26.) The Court of Appeals held "that the district court established a payment plan, imposed prejudgment interest, and elevated EEOC to the status of a favored creditor with 100% payment." 913 F.2d at 526. In reversing the district court, the Court of Appeals correctly noted that, "[t]he reason for this ban against enforcement of money judgments is to prevent unfairness to a debtor's other creditors." *Id.*

What the Commonwealth proposes to do in this case is even more draconian. In its prayer, the Commonwealth asks that it be authorized to require Debtors "to forfeit their right or franchise to engage in certain business activities 'until such time as all monies ha[d] been paid for restitution, costs and civil penalties.'" Depending on what "right or franchise" is forfeited, this could impose a near insuperable obstacle to a successful plan of reorganization.

### III. CONCLUSION

The Bankruptcy Court's order of July 22, 2020 is **AFFIRMED.**

**IT IS SO ORDERED.**

SIGNED this 4th day of December, 2020.

                                                                KEITH P. ELLISON
                                                                UNITED STATES DISTRICT JUDGE